IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTT BRAITHWAITE

        Plaintiff,

        vs.                                  Case No. 12-CV-2288 JTM

CITY OF LENEXA

        Defendant.

MEMORANDUM AND ORDER

        The court has before it defendant City of Lenexa's Motion to Dismiss (Dkt. No. 5) and plaintiff Scott Braithwaite's Motion for Default Judgment (Dkt. No. 7). Lenexa argues that Braithwaite's Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Braithwaite did not respond to Lenexa's Motion. Instead, he asks the court for default judgment based on Rule 12(a)(1)(A). The court finds that Braithwaite failed to state a claim in his Complaint, and Lenexa filed a proper and timely responsive pleading. Thus, the court denies Braithwaite's Motion and grants Lenexa's Motion.

**I. Default Judgment: Fed. R. Civ. P. 12(a)(i), (b).**

        Rule 12 of the Federal Rules of Civil Procedure provides that a responsive pleading must be filed within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(i). Rule 12(b) provides that a party may assert certain defenses by motion, which shall serve as a responsive pleading and alter the time for filing an answer until after the court rules on the motion. *Selby v. Shalala*, CIV. A.,WL 390408 *2 (D. Kan. Sept. 30, 1993). The City of

Lenexa filed a Motion to Dismiss within the required time frame. This served as a responsive pleading in satisfaction of Rule 12(a), so Braithwaite's Motion for Default Judgment is denied.

## II. Motion for Summary Judgment – Factual Background

On the night of February 28, 2012, Scott Braithwaite was asleep in the back of his 2003 GMC Envoy, which had been parked for hours in a Capitol Federal bank parking lot in Lenexa, Kansas. At 10:42 p.m., Officers David Rodlund and Justin Schopfer, dispatched for conducting a welfare check, approached the vehicle. *Id*. By Braithwaite's account, a combination of frost, lack of lighting, and tinted windows on the vehicle made it impossible for the officers to see in the vehicle. The officers opened both unlocked back doors to the vehicle and found Braithwaite wrapped in a sleeping bag on the back seat of the vehicle. This action woke Braithwaite up. Officer Rodlund announced the officers' presence and tried to speak with Braithwaite, who refused to respond. *Id*. The officers took the sleeping bag off of Braithwaite. Braithwaite continued his silence, so the officers closed the doors of the vehicle. The officers, having familiarity with Braithwaite, called his mother Sandy Braithwaite and told her that Scott "appear[ed] fine." *Id.* As Braithwaite explains, he had become homeless after Ms. Braithwaite had police help remove him from her home on February 12, 2011. *Id*. After calling Ms. Braithwaite, the officers left the scene.

On March 1, 2011, Officer Rodlund was dispatched to conduct a second welfare check on Scott Braithwaite, whose vehicle was still parked in the Capitol Federal bank parking lot. The property managers had asked Braithwaite to remove his vehicle, and he "...would not acknowledge them." (Exhibit 1 at 3). Officer Rodlund, along with Officers David Velasquez, Scott Dewitte, Greg Bogart and Gale Swilhart arrived on the scene at approximately 3:43 p.m.

(Dkt. No. 1 at 4). Upon arrival, the officers observed Braithwaite sitting in the front seat of his vehicle with all doors locked and the sunroof open. When Braithwaite again refused to communicate with police, Sergeant Scott Dewitte climbed onto the roof of Braithwaite's vehicle and unlocked the doors of the vehicle by leaning in through the sunroof. *Id.* Officer Rodlund opened Braithwaite's door and said he was being arrested for trespassing.

Officer Rodlund requested an ambulance at 3:50 p.m. (Dkt. No. 1 at 4; Exhibit 1 at 3.) When emergency assistance arrived on the scene, paramedics found Braithwaite sitting in the driver's seat of his vehicle. Paramedics attempted to communicate with Braithwaite, asking him if he would allow EMS crews to assist him. (Dkt. No. 1 at 5). Braithwaite refused to respond to verbal requests, and was unresponsive with the paramedic other than to physically remove the paramedic's hands from his wrist when the paramedic tried to take Braithwaite's pulse. (Dkt. No. 1 at 5).

According to the Prehospital Care Report, EMS workers called Braithwaite's mother, Sandy Braithwaite, on her cell phone. (Exhibit 1 at 3). Ms. Braithwaite informed EMS workers that Braithwaite suffers from depression and was not taking his medication. Additionally, Ms. Braithwaite stated that when Braithwaite's potassium gets low, he goes into a catatonic state. *Id.*

After the initial EMS assessment, police officers picked Braithwaite up and removed him from the driver's seat of his car. (Dkt. No. 1. at 6). At that time, Officer Rodlund informed Braithwaite that "he was either going to jail or to the hospital." *Id.* Rodlund handcuffed Braithwaite's hands behind his back and assisted him onto the cot. Braithwaite was transported via ambulance to Shawnee Mission Medical Center. *Id.*

Upon arrival at the hospital, Braithwaite was served with a Short Form Notice to Appear for Criminal Trespassing. (Dkt. No. 1 at 8). Braithwaite's vehicle was secured and removed by

Sandy Braithwaite. Braithwaite was ultimately confined to Rainbow Mental Hospital from March until April 2011. A court order was issued pursuant to K.S.A. 59-2967 for outpatient treatment, ending on September 6th, 2011. (Dkt. No. 1. at 51).

### III. Motion for Summary Judgment – Legal Standards

#### A. Motion to Dismiss for Failure to State a Claim

According to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Because plaintiff is proceeding pro se, this court construes his arguments liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**B. 42 U.S.C. § 1983**

Under § 1983, municipalities may not be sued solely on the basis of constitutional violations or injuries inflicted by its employees. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978).

In order for a municipality to be liable for the acts of an employee, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998), *see also Monell*, 436 U.S. at 694.

In cases involving alleged constitutional violations by police officers, a plaintiff may argue inadequacy of police training as the basis for a § 1983 claim. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). Municipal liability attaches only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact. *Id.* "[A] plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) quoting *Allen v. Muskogee,* 119 F.3d 837, 841 (10th Cir.1997), *cert. denied,* 118 S.Ct. 1165 (1998).

**IV. Legal Conclusions**

Braithwaite asserts a §1983 claim based on the alleged violations of his First, Fourth, Eighth and Fourteenth Amendments by Lenexa police officers. (Dkt. No. 1 at 61). As discussed above, in order for Braithwaite to recover under §1983, he must allege sufficient facts to show that his claim is plausible. *See Corder*, 566 F.3d at 1223-24. Braithwaite has failed to meet this

standard. His sixty-five page Complaint—including over thirty pages of emails—does not plausibly show that Lenexa has a policy or custom that encourages or allows its officers to violate the constitutional rights of its citizens. *See Monell*, 436 U.S. at 694.

Because plaintiff is proceeding pro se, this court construes his arguments liberally. *Haines* 404 U.S. at 520-21. However, even taking a liberal view of Braithwaite's Complaint, the court cannot find that Lenexa has an unconstitutional policy of authorizing its police to use excessive force. Contrary to this assertion, Lenexa has a policy of "necessary force." Further, Braithwaite quotes Lenexa Police Chief Ellen Hanson as saying that she felt that the force used was a result of necessary welfare assistance. *Id.* There is nothing unconstitutional about this policy. *See Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009).

Braithwaite's claim fails to reach the threshold of facial plausibility, because he has not alleged sufficient facts for the court to draw any reasonable inferences that the City of Lenexa maintains unconstitutional policies or customs. In the absence of a sufficient factual basis, Braithwaite's claim is insufficient. Therefore, according to Fed. R. Civ. P. 8(a)(2), the court grants the defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

**V. Attorney Fees**

42 U.S.C. § 1988 allows a prevailing party to recover attorney fees as part of the costs. The statute does not distinguish between plaintiffs or defendants, nor does it provide the circumstances entitling a party to recover fees. However, in interpreting § 1988, courts have drawn a distinction between plaintiffs and defendants. *See Cobb v. Saturn Land Co.*, 966 F.2d 1334, 1338 (10th Cir.1992). A prevailing plaintiff may recover attorney's fees "in all but special

circumstances," but a prevailing defendant may recover fees only when the plaintiff's action "'is found to be unreasonable, frivolous, meritless or vexatious.' " *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 417-421(1978) (quoting *Carrion v. Yeshiva University* 535 F.2d 722, 727 (2nd Cir.1976)).

This court does not find that the Braithwaite brought this action in bad faith, or that his action was unreasonable. Although his legal basis for bringing the claim was insufficient, it is clear from the Complaint that Braithwaite had a good faith belief that his rights had been violated. Pursuant to 42 U.S.C. § 1988, the court declines to award the City of Lenexa any attorney fees in connection to this matter.

IT IS ACCORDINGLY ORDERED this 2nd day of November 2012, that plaintiff's Motion for Default Judgment (Dkt. No. 7) is denied. The court grants defendant's Motion to Dismiss (Dkt. No. 5) but denies the defendant's request for attorney fees pursuant to 42 U.S.C. § 1988.

        s/J. Thomas Marten
        J. THOMAS MARTEN, JUDGE